UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| JEFFREY AKANS, | ) | |
|---|---|---|
| | ) | Case No. 3:23-cv-79 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Jill E. McCook |
| UNUM LIFE INSURANCE COMPANY OF AMERICA and UNUM GROUP CORPORATION, | ) ) ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION

Before the Court is Plaintiff Jeffrey Akans's motion for judgment on the record. (Doc. 36.) For the following reasons, the Court will **GRANT** Akans's motion (*id.*) and will **ENTER** judgment in his favor.

### I. BACKGROUND

Akans brings the present action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to obtain judicial review of Defendants Unum Life Insurance Company of America and Unum Group Corporation's (collectively, "Unum") termination of his long-term disability benefits. (Doc. 1.) Akans previously worked as an equipment manager at Harrison Construction ("Harrison"), and, as part of his employment, was covered by Harrison's long-term disability plan (the "Plan"). (Doc. 16-1, at 81, 94.) Unum issued and administered the Plan. (*Id.* at 94.)

### A. The Plan

The Plan provided:

> You are disabled when Unum determines that:
>
> you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
>
> you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.
>
> After 12 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training, or experience.

(*Id.* at 108.) The Plan defines "material and substantial duties" as duties that "are normally required for the performance of your regular occupation[] and cannot be reasonably omitted or modified." (*Id.* at 125.) The Plan also defines "regular occupation" as "the occupation you are routinely performing when your disability begins" and provides that "Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." (*Id.* at 127.) The parties agree that the Plan allowed Akans and Unum to conduct an independent medical review, although it did not require either to do so. (Doc. 37, at 23; Doc. 38, at 21.)

### B. Factual History

Akans began his employment with Harrison in 2008. (*Id.* at 5, 81–83, 305.) His job required him to manage the repair and maintenance of all equipment in Harrison's Southern Construction Division, and he oversaw three maintenance shops and nine employees. (*Id.* at 83.) On February 16, 2018, Akans ceased working and shortly thereafter submitted a claim for long-term disability benefits under the Plan based on his relapsing-remitting multiple sclerosis. (*Id.* at 5, 55, 57.)

Unum reviewed Akans's job duties and determined that his "regular occupation" required light work, which Unum defined as requiring him to lift up to ten pounds frequently, lift up to twenty pounds occasionally, and exert a negligible amount of force constantly to lift, carry, push, pull, or otherwise move objects; sit frequently; and occasionally walk, climb, balance, stoop, kneel, and crouch. (*Id.* at 288–91.) In reviewing Akans's claim, Unum also examined various medical records from his treating physicians. (*Id.* at 310–13.) Dr. Sibyl Wray, a neurologist, treated Akans, and Dr. Wray's records contained MRI results which showed three small lesions on Akans's cervical cord, which is consistent with a diagnosis of multiple sclerosis. (*Id.* at 237.)

In a July 2018 visit, Dr. Wray noted that, although Akans had "generally been stable neurologically over the years," over the past year his functions deteriorated, including that his "long-standing gait disturbance" had "become progressively worse" and that his cognitive dysfunction, fatigue while working, vertigo, manual dexterity, fine motor movements, and coordination had become worse. (*Id.* at 180.) Lastly, Dr. Wray noted that these problems were considered Akans's "baseline" and that his functions can become even worse when subjected to "provocation," such as increased fatigue, stress, exertion, and exposure to heat. (*Id.* at 181.) Therefore, Dr. Wray concluded that, because Akans's job required him to be outside—often in the heat and on uneven terrain—Akans's mental activity "will be unreliable" until Akans is out of the heat and on level ground, which placed him at a higher risk for falls and injury. (*Id.*) Dr. Wray reported to Unum that Akans could not work for more than ten minutes if the temperature was above eighty degrees; could not climb, bend, twist, stoop, or crawl; and could not work on uneven ground. (*Id.* at 178.) She also reported that "[a]ny stress-inducing event (deadlines, communication requiring immediate responses, 'thinking on his feet,' etc.), or mentally taxing tasks will negatively impact" Akans's cognitive abilities. (*Id.*)

Unum also sent Dr. Wray a questionnaire regarding Akans's disability. (*Id.* at 69.) In this questionnaire, Dr. Wray opined that Akans "should not work at his place of employment due to extreme fatigue and dominant spasticity." (*Id.*) Dr. Wray also opined that Akans "can not function cognitively or physically in a manner that is safe." (*Id.*)

On September 6, 2018, Unum approved Akans for long-term disability benefits based on Akans's multiple sclerosis. (*Id.* at 334.) In doing so, Unum informed Akans that his benefits would be subject to continuing review and could change based on changes in his medical condition. (*Id.* at 335.) Unum's first updated review began in December 2018, when it reviewed his updated medical information. (*Id.* at 360–62.) After reviewing Dr. Wray's opinion that Akans was still unable to perform his job "all of the time," Unum decided to continue his benefits. (*Id.* at 365–66, 445–47.)

On April 27, 2019, the United States Social Security Administration approved Akans for Social Security Disability benefits. (*Id.* at 473.) Unum began another review of Akans's benefits on April 27, 2020. (Doc. 16-2, at 24.) Unum then requested additional information to complete its review on July 1, 2020. (*Id.* at 232–33.) In June 2021, Unum determined that it required additional medical records to continue its review because Akans's "symptoms had remained stable in the past year, and his activities were mixed with no relapse of [multiple sclerosis] in the last year." (*Id.* at 240; Doc. 16-3, at 12.) Unum received various medical records from different providers, and Akans's treatment history, which was contained in these records, is detailed below.

From 2019 to 2021, Akans received treatment from his primary care physician, Dr. Fred Hurst. (Doc. 16-3, at 188.) In January and February 2019, Dr. Hurst noted that Akans reported arthralgias, joint stiffness, dizziness, limb weakness, numbness, and radiating pain, but no

4

myalgias, fainting, joint swelling, fatigue, cognitive changes, difficulty walking, or tremors. (*Id.* at 189, 199.) Dr. Hurst also conducted a physical exam on February 4, 2019, which revealed that Akans had no gross motor deficits, some muscle weakness, normal mental status, no gross sensory loss, normal coordination, normal gait, and intact recent and remote memory. (*Id.* at 182–85.) On July 8, 2019, Akans reported to Dr. Hurst that he was "doing well." (*Id*. at 165.) On October 8, 2019, and again, on May 10, 2021, Dr. Hurst found Akans's physical examination largely normal. (*Id.* at 142, 159–61.)

On May 19, 2021, Akans reported to Dr. Hurst that he was not experiencing any muscle weakness, back pain, swelling in his extremities, difficulty walking, gait dysfunction, or fatigue, and Dr. Hurst noted that Akans appeared healthy with normal ambulation, mood, affect, and judgment. (*Id.* at 128–29, 35, 42–43, 47–48.) Dr. Hurst conducted a neurologic assessment which showed that Akans's gait and station were normal, that his sensations were grossly intact, and that his coordination was intact with no tremors. (*Id.* at 129.) Dr. Hurst also observed that Akans walked without an aid and was balanced when standing and sitting. (*Id.* at 136.) Akans also reported that he did not require assistance in performing daily activities and that he exercised moderately daily. (*Id.* at 34–35, 127–28.)

Akans also continued to see Dr. Wray during this period. On December 23, 2020, Dr. Wray noted that Akans reported continued chronic symptoms, but that Akans did not believe his symptoms had gotten worse. (Doc. 16-4, at 79.) Akans reported that his "cognition was one of the chief reasons why he went on disability." (*Id.*) Akans also reported that his fatigue varied in severity, he experienced leg cramps, back pain, joint pain, numbness, gait disturbance, and memory loss. (*Id.* at 80.) Dr. Wray found that Akans could recall three out of three items in a recall test at five minutes, could follow a three-step command, and that his concentration was

adequate. (*Id.* at 81.) Dr. Wray also found that Akans could complete a motor exam; could stand without using his arms or hands; could march in place, squat, and toe walk; and had a normal station and base and a moderately unsteady tandem. (*Id.*) Dr. Wray saw Akans on July 22, 2021. (*Id.* at 24.) Dr. Wray noted much of the same from the December 23, 2020 visit. (*Id.*) However, in addition, Dr. Wray concluded that Akans experienced "[m]ild cognitive decline." (*Id.* at 25.)

Akans also underwent neurocognitive assessments conducted by Dr. Lisa Oglesby. (*Id.* at 131.) In 2017, a neuropsychological test showed that Akans had variable executive functioning, superior overall memory function, and a notable slowed response time in bilateral hand motor speed. (Doc. 16-1, at 274.) Dr. Oglesby conducted an updated neurocognitive assessment on August 25, 2020. (Doc. 16-4, at 127–32.) She concluded that Akans's cognitive functioning in 2020 was "very good and similar to or slightly improve[d]" from the 2017 test. (*Id.* at 132.)

In addition to reviewing Akans's medical records, on July 8, 2021, a Unum benefits specialist spoke with Akans on the phone. (Doc. 16-3, at 4.) Akans reported that fatigue is his "biggest issue" and that "whenever he gets tired, he is done for the day." (*Id.*) He also reported having memory issues, numbness and instabilities in his right ankle and knee, balance issues, back spasms, dizziness, and trouble with his right foot and calf. (*Id.* at 4–5.) To assist with his balance issues, Akans reported that he sometimes used a cane, but other times he went six to eight weeks without it. (*Id.* at 5.) Describing his daily routine, Akans reported that: if he felt good, he would mow his lawn on his riding mower; he tries to walk regularly; and does tasks around the house. (*Id.*) He said that on good days he can climb a ladder, but on other days he is

too dizzy and cannot. (*Id.*) Akans also reported that he can walk for thirty minutes at a time but that he cannot walk on uneven terrain. (*Id.*)

A Unum benefits specialist again spoke with Akans on the phone in August 2021. (Doc. 16-4, at 159–60.) On this call, Akans reported that he was having memory issues and balance issues. (*Id.*) The benefits specialist also reported that Akans was stuttering on the phone. (*Id.* at 160.)

Additionally, Unum sent questionnaires to Akans's treating physicians. (*Id.* at 48.) Dr. Wray opined that Akans would not be able to perform light work and that Akans "has an unsteady gait and frequent body weakness. Which would make the [] tasks [required for a light-work occupation] difficult and/or impossible at times." (*Id.* at 49.) Dr. Hurst also opined that Akans would not be able to perform light work. (*Id.* at 207.)

On October 21, 2021, Unum referred Akans's claim to a file-reviewing physician, Dr. Rosemary Szollas. (*Id.* at 198.) Dr. Szollas noted that Akans underwent "stable relatively unchanged treatment and management plans" for his multiple sclerosis. (*Id.* at 199–200.) Dr. Szollas concluded that Akans's restrictions and limitation were no longer supported because

> the physical exam findings, demonstrated capacity, stability of management, diagnostic testing, reported symptoms, reported activities and improvement in [Akans's] condition as reflected in the file do not support that [Akans] would be precluded from performing the outlined light occupational demands on a full-time sustained basis. In addition, as outlined above, the medical evidence supports that the insured has improvement of his medical condition since his [Social Security] award on 4/27/19.

(*Id.* at 202.) Next, Dr. Szollas referred Akans's claim for designated medical officer review. (*Id.*)

Designated medical officer, Dr. Michael Chilungu, a neurologist, agreed with Dr. Szollas's conclusion that Akans's restrictions and limitations were not supported. (*Id.* at 213–

14.) In doing so, Dr. Chilungu opined that Akans did not demonstrate evidence of gross motor deficits, sensory loss, or coordination difficulties; exhibited a normal pattern of gait; exhibited only mild weakness in his right hamstring; retained the ability to ambulate independently, only faltering when his balance capabilities were stressed to an unusual degree; exhibited normal coordination and gross cognition; and had very good cognitive function, according to his neuropsychological exam. (*Id.*)

After receiving additional medical records, on November 18, 2021, Dr. Szollas again reviewed Akans's claim and again concluded that his restrictions and limitations were not supported. (*Id.* at 290–92.) On November 22, 2021, Dr. Chilungu also reviewed Akans's claim again, and he continued to agree with Dr. Szollas's opinion. (*Id.* at 297–98.) Regarding the supplemental medical records, Dr. Chilungu opined that:

> The add ended [sic] medical records do not contain additional information, in the form of physical or cognitive examination data, to establish the proposition that [Akans] is physically or cognitively functionally impaired and thereby incapable of functioning at the above described occupation level. No additional neuroimaging findings, or neurophysiologic testing abnormalities are presented to likewise bolster a claim that [Akans] is significantly functionally impaired, and therefore lacking the ability to function at the above level of occupational rigor.

(*Id.* at 298.)

On November 24, 2021, Unum notified Akans that it was terminating his benefits. (*Id.* at 311.) In its termination letter, Unum cited various reasons supporting its conclusion that his medical records did not support the conclusion that Akans could not perform his occupation. (*Id.* at 311–19.) Specifically, based on its interview with Akans, Unum noted:

> Fatigue is your biggest issue; you have been having memory issues; you experience numbness in your lower extremities; your right ankle and knee are unstable and cause balance issues; you have spasms in your back; and you experience dizziness. You reported that you use a cane sometimes but can go six to eight weeks without it. In regard to your activities, you reported that on a good day you can spend five hours on your riding lawn mower, or do maintenance on

the mower, go to the grocery store, climb a ladder, drive, read on the internet, watch videos and you can walk 30 minutes at a time.

(*Id.* at 313.)  Additionally, Unum noted the following based on the records Unum requested from Akans's treating physicians, Doctors Hurts, White, Wray, and McMillian:

- "The physical exam findings [conducted by Dr. Hurst on May 19, 2021] documented normal motor strength and tone, movements of all extremities, and gait and station.  Your cranial nerves were grossly intact, sensation was intact, and there was no tremor." (*Id.*)

- "The November 10, 2021, office visit [with Dr. Hurst] . . . noted de[c]reased hearing, neck pain with motion, but normal motor strength in all extremities.  The neurological examination described a normal gait and station with normal coordination testing." (*Id.*)

- Dr. White, Akans's urologist, opined that Akans does not have "restrictions or limitations from a urology standpoint." (*Id.*)

- Akans informed Dr. Wray during a December 23, 2020 visit that he "walk[s] four miles every day and [his] ankle is not as w[]obbly." (*Id.* at 313–14.)  In the same visit, Akans "denied falls and reported that [his] cognition is one of the main reasons [he] went on disability." (*Id.* at 314.)

- "The mental and physical exam [conducted by Dr. Wray on July 22, 2021] revealed that you were alert and oriented []; speech was fluent; you had 3/3 recall at five minutes; your fund of knowledge was appropriate; word usage was correct; you could follow a three-step command; you had no left/right confusion; and your concentration was adequate." (*Id.*)  The physical exam also noted that Akans "had 5/5 strength in the upper and lower extremities with normal tone and bulk and no pronator drift, and [he] had slightly increased tone in the right lower extremity hamstring." (*Id.*)  Akans was also "unsteady with attempt to tandem" but had a negative Romberg test—an examination used to test balance, where a positive result indicates a loss of balance. (*Id.*)

- Dr. McMillian, Akans's retinal specialist, opined that Akans had "stable age related cataracts in both eyes, stable subjective visual disturbance, stable dermatochalasis of both eyelids, stable hyperopia of both eyes, stable astigmatism of the left eye, stable MS, and stable optic neuritis." (*Id.* at 315.)

- Dr. McMillian opined that Akans could perform the visual demands of his occupation. (*Id.*)

Based on these considerations, Unum determined that Akans was "no longer limited from performing the material and substantial duties of [his] regular occupation and no longer meet[s] the definition of disability." (*Id.*)

On April 5, 2022, Akans appealed Unum's decision and provided additional medical records. (*Id.* at 336.) Akans included a support letter from Dr. Wray, updated neuropsychological testing from Dr. Oglesby, and a support letter from Dr. Hurst. (*Id.*) Dr. Wray wrote:

> I am in possession of your denial for Mr. Jeffrey Akans. I sent a response back in October of 2021 stating that I did not agree with your decision to deny his disability claim. Your reason for denial was that you thought that he could exert 20 lb[s]. of force occasionally and or up to 10 lbs. of force frequently and a negligible amount of force to constantly carry, lift, push or pull or otherwise move objects.
>
> While Mr. Akans may be able to do these periodically, he cannot carry out these tasks on a constant basis.
>
> Mr. Akans is undergoing more cognitive testing as I am typing this letter to you. His cognition is declining and is of concern. Mr. Akans has also had two falls already this year due to gait disturbance which has caused injury to his ankle and his thumb. His right lower extremity is constantly spastic. This spasticity causes pain and the potential for falls. Mr. Akans also has tingling and numbness in his right arm and fingers and is worsening. He has difficulty with fine motor skills and his hands shake with motor tasks. This problem gets worse as he works and gets tired.
>
> While working Mr. Akans becomes stressed and decompensates. I am reiterating that I declared him disabled and unable to work.

(*Id.* at 340.) Dr. Hurst wrote that "[i]n my medical opinion, Mr. Akans remains totally, and completely, and permanently disabled from physical, emotional, and psychological stand points [sic] to maintain jobs or gainful employment of any types or kind." (*Id.* at 342.) After conducting updated neuropsychological testing, Dr. Oglesby concluded that Akans's overall cognitive function had declined since his 2020 assessment, "primarily in specific areas of

learning and memory and with slowing of general information processing speed." (*Id.* at 349.) She also noted that multitasking still presents a challenge for Akans. (*Id.*)

On May 10, 2022, Dr. Scott Norris, another of Unum's reviewing physicians, reviewed Akans's claim and found that:

> The level of contemporaneous treatment remained stable and of modest intensity without evidence of a significant acceleration or advancement that would be expected or consistent with refractory or progressive [symptoms]. The level of treatment was not [consistent with] the severe level of impairment reported by [Akans], or with a degree of functional compromise that would preclude Light Work.

(*Id.* at 391.) Dr. Norris concluded that Akans's self-reported symptoms were contradicted by his provider's opinions and requested a special consult. (*Id.* at 397.)

On May 18, 2022, Dr. Julie Keaveney, a psychologist, reviewed Akans's claim. (*Id.* at 403.) She concluded that, while "validity of [Dr. Oglesby's] evaluation [was] undetermined as there was no formal embedded measures of effort administered or discussed in the test battery[,] . . . there was consistency across three evaluations in the areas [Akans] struggled with the most" and that "given the lack of validity measures, it is not possible to reliably make a determination about [Akans's] cognitive impairment." (*Id.*) On May 19, 2022, Unum informed Akans that it determined that his medical information did not support restrictions and limitations that would preclude him from performing his light-work occupation. (*Id.* at 444.) Unum gave Akans until June 3, 2022, to submit any additional records. (*Id.*) Akans's counsel requested an extension on June 3, 2022. (*Id.* at 485.)

On June 8, 2022, Unum informed Akans that it was upholding its denial of benefits. (*Id.* at 499.) On January 31, 2023, Akans submitted a letter from Dr. Oglesby in which she explained the methodology in her report and that she disagreed with Dr. Norris and Dr. Keaveney, and

11
Case 3:23-cv-00079-TRM-JEM   Document 40   Filed 03/20/24   Page 11 of 19   PageID #: 2244

Akans requested that Unum reconsider its denial. (*Id.* at 561–68.) Unum responded that the additional evidence did not change its decision. (*Id.* at 571–72.)

On March 2, 2023, Akans filed this action, seeking judicial review of Unum's denial of his long-term disability benefits. (Doc. 1.) Akans has moved for judgment on the ERISA administrative record (Doc. 36), and his motion is now ripe for the Court's review.[1]

## II. STANDARD OF REVIEW

"When reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made." *McClain v Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998)). "Denials of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) are reviewed *de novo* 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Id.* (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). In this case, the parties agree that the Plan does not afford Unum discretionary authority to determine benefit eligibility and that *de novo* review is appropriate. (*See* Doc. 37, at 10; Doc. 38, at 17.)

Under a *de novo* standard of review, the "role of the court . . . is to determine whether the administrator . . . made a correct decision" to deny benefits. *Hoover v. Provident Life & Acc. Ins.*, 290 F.3d 801, 808–09 (6th Cir. 2002) (citation and quotations omitted). The Court must determine "whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan." *Id.* at 809. In making this determination, courts "apply

---

[1] As set forth in the Court's scheduling order, Unum is also "deemed to have moved for judgment in [its] favor based upon the administrative record. (Doc. 12, at 2.)

general principles of contract law and must read the plan provisions 'according to their plain meaning in an ordinary and popular sense.'" *O'Neill v. Unum Life Ins. Co. of Am.*, No. 18-1382, 2018 WL 7959523, at *3 (6th Cir. Nov. 19, 2018) (quoting *Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000)). Additionally, the Court reviews the record without giving any deference or presumption of correctness to the administrator's decision. *James v. Liberty Life Ins. Co. of Boston*, 582 F. App'x 581, 586 (6th Cir. 2014). However, the insured bears the burden of proof by a preponderance of the evidence. *O'Neill*, 2018 WL 7959523, at *3.

### III. ANALYSIS

Akans has moved for judgment on the ERISA record, arguing that Unum incorrectly terminated his long-term disability benefits. (Doc. 36.) Specifically, Akans argues that he was "disabled" under the policy when Unum terminated his benefits because his multiple sclerosis and the associated cognitive impairments prevented him from performing the duties of his occupation or any other occupation. (Doc. 37, at 14–28.) Unum responds that Akans's multiple sclerosis was stable such that he was not precluded from his light-work occupation and therefore was not disabled under the Plan. (Doc. 38, at 18–24.)

Because Akans received more than twelve months of payments under the Plan—from August 2018 to November 24, 2021—he was considered "disabled" under the Plan if, "due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training, or experience." (Doc. 16-1, at 108.) Unum initially approved Akans for benefits due to "the symptoms related to your medical condition of multiple sclerosis." (*Id.* at 334.) Therefore, Akans remained disabled under the Plan if he was unable to perform the duties of any gainful occupation due to his multiple sclerosis. Although the Plan calls for this "gainful occupation" standard, Unum states that it determined that the

"sedentary occupations available to [Akans] did not provide a 'gainful' wage as defined under the Policy." (Doc. 38, at 10 n.6.) Accordingly, Unum evaluated Akans's claim under the "regular occupation" standard, and the Court will do the same. (*Id.*)

To determine whether Akans was capable of performing "the material and substantial duties" of his "regular occupation" under the Plan, the Court must first define the nature of the work required for Akans's regular occupation. Under the Plan, Unum defines Akans's regular occupation as how his occupation is normally performed in the national economy. (Doc. 16-1, at 108.) The parties agree that Akans's regular occupation required light work. (Doc. 37, at 22; Doc. 38, at 4.) Under Unum's definition of light work, Akans would have to: (1) exert up to twenty pounds of force occasionally, up to ten pounds of force frequently, and a negligible amount of force constantly; (2) frequently sit; and (3) occasionally stand, walk, climb, balance, stoop, kneel, and crouch. (Doc. 16-1, at 167.) Thus, the Court must determine whether Akans's multiple sclerosis prevented him from performing these tasks.

The administrative record contains conflicting medical evidence regarding whether Akans was capable of performing light work. Doctors Wray and Hurst—Akans's treating physicians—opine that he cannot perform his occupation or any occupation. (Doc. 16-4, at 49, 207.) Unum's reviewing physicians contend that Akans's medical records did not support the conclusion that he could not perform light work. (Doc. 16-3, at 198–202, 212–14.)

In situations where the opinions of the treating physicians contradict the opinions of non-treating physicians, such as Unum's reviewing physicians, the Supreme Court of the United States instructs that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician" and may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts

with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Stated another way, the Sixth Circuit has explained that "courts may not conclude that the opinion of treating physicians is entitled to more weight than that of non-treating physicians." *Bruton v. Am. United Life Ins. Corp.*, 798 F. App'x 894, 904 (6th Cir. 2020) (citing *Black & Decker*, 538 U.S. at 834). However, "[p]lan administrators may not arbitrarily refuse to credit a claimant's reliable credible evidence, including the opinions of a treating physician," and "a claimant's documented limitations may not simply be dismissed as subjective exaggerations . . . where . . . the individuals purporting to make that credibility determination did not meet or examine the claimant." *Id*. Further, while there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination," *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005), a physician's credibility determination is "entitled to little weight" when he conducts a paper review of a claimant's file, even though the plan gave the administrator the right to have a physical examination conducted, *Bruton*, 798 F. App'x at 905 (citation and quotations omitted).

In this case, the Court finds that the evidence demonstrates that Akans's multiple sclerosis and the associated symptoms prevented him from performing his light-work occupation. Initially, on June 19, 2018, Dr. Wray opined that Akans could not work due to extreme fatigue and dominant spasticity and that he could not function safely cognitively or physically. (Doc. 16-1, at 69.) Dr. Wray also noted in a July 2018 office visit that Akans experienced baseline problems with gait disturbance, cognitive dysfunction, fatigue in the work setting, vertigo, manual dexterity, fine motor movements, and coordination and that these symptoms worsened when faced with stress, working in the heat, or working on uneven ground—as his job required. (*Id.* at 180–81.)

After Unum began paying Akans benefits but before it terminated his benefits, in 2020, Dr. Wray still gave similar opinions. In Unum's 2020 review, Dr. Wray continued to opine that "Akans is not able to work at this time due to extreme fatigue and dominant spasticity due to multiple sclerosis." (Doc. 16-2, at 43.) Dr. Wray also noted "[m]ild cognitive decline" in a 2021 visit. (Doc. 16-4, at 25.) In support of Akans's appeal of Unum's termination of his benefits, Dr. Wray again concluded that Akans's "cognition is declining"; that Akans had two falls in the prior year because of his gait disturbance; that his lower right extremity is spastic which can lead to falls; and that his problems get worse when he works or is tired. (*Id.* at 340.) These symptoms prevent Akans from performing light work; for example, he cannot balance, stand, or exert force if he suffers from balance issues and falls.

Additionally, Dr. Oglesby's testing concluded that Akans suffered a decline in his cognitive function from 2020 to 2022. (*Id.* at 344–49.) Unum's reviewing physicians did not disagree with this result but instead merely questioned its validity. They opined that the testing's validity was "undetermined as there were no formal embedded measures of effort administered in the test battery" and therefore determined that it was "not possible to reliably make a determination about [Akans's] cognitive impairment." (*Id.* at 403.)

Unum nonetheless argues that Akans's reports of his symptoms and his assessments do not objectively support the conclusion that he is precluded from light work. (Doc. 38, at 19.) The Court disagrees. As detailed above, Akans's symptoms continued over the course of his disability, and his treating physicians consistently opined that Akans's condition prevented him from working. As Dr. Wray opined on multiple occasions, the stress caused by the conditions occurring while Akans was at work led to flare-ups. (Doc. 16-1, at 178, 181; Doc. 16-4, at 340.) Therefore, it is unsurprising that Akans did not always report symptoms and that he felt fine on

some days and he did not on others. (Doc. 16-3, at 4–5.) This does not mean that Akans was able to perform the duties of a light-work occupation, and this squares with Dr. Wray's opinion that Akans could perform light work "periodically" but that "he cannot carry out these tasks on a constant basis." (Doc. 16-4, at 340.)

Unum also argues that Doctors White and McMillan "both confirmed that [Akans] did not have any restrictions and limitations." (Doc. 38, at 19.) This is true as far as it goes. But there is more: Dr. White, a urologist, opined that Akans did not have any "restrictions or limitations from a urology standpoint" (Doc. 16-4, at 313), and Dr. McMillan, a retinal specialist, opined that Akans could perform the visual demands of a light-work occupation. (*Id.* at 315.) Given that multiple sclerosis is a neurological disorder—not one mainly affecting the genitourinary system or vision—the fact that Akans was not limited from a urology standpoint or a visual standpoint trails in importance within the Court's inquiry. These opinions have nothing to do with Akans's fatigue, muscle spasticity, cognitive issues, and gait disturbances, which are the reasons why he went on disability. And, because Dr. Wray is a neurologist, the Court places greater weight on his opinion that Akans cannot perform a light-work occupation.

Further, Unum argues that Akans exercised regularly, did chores around the house, and drove to the grocery store. (Doc. 38, at 19.) As discussed above, this is not inconsistent with Akans's inability to work, because multiple sclerosis comes in episodes. Although the opinions from Akans's treating physicians are not subject to deference from the Court, these opinions and objective testing are evidence that Akans's multiple sclerosis prevented him from performing light work such that he was disabled under the Plan.

The opinions of Unum's reviewing physicians are less persuasive. Both Dr. Szollas and Dr. Chilungu opined that Akans's medical records did not preclude him from performing light

work.  (Doc. 16-3, at 198–202, 212–14.)  However, they both focused on the stability or improvement of Akans's condition.  (*Id.*)  As discussed above, the Court disagrees with their conclusions and finds the record demonstrates consistent symptoms due to Akans's multiple sclerosis across years of treatment and even a decline at the end of the relevant period.  Dr. Norris's opinion suffers from the same defect.  He identifies specific portions of Akans's treating history and concludes that Akans's reported symptoms on a good day demonstrate that Akans can work on any day.  Even if Akans's symptoms improved, this does not necessarily require the conclusion that he could perform a light-work occupation; Akans's reported symptoms on good days are not inconsistent with Dr. Wray's opinions that the stress from work would cause flare-ups and that therefore Akans could not perform the duties of a light-work occupation.

Additionally, Unum—both in its medical reviewers' opinions and in its briefing—questions the validity of the opinions of Akans's testing as well as his self-reported symptoms.  (Doc. 16-4, at 403; Doc. 38, at 21.)  In situations such as this, the reviewer cannot simply dismiss a claimant's documented limitations, particularly where "the individuals purporting to make that credibility determination did not meet or examine the claimant." *Bruton*, 798 F. App'x at 904.  While Unum was not required to examine Akans, this lack of examination renders Unum's claim reviewers' criticism of his symptoms and testing less persuasive.

Accordingly, upon a *de novo* review of the record, the Court finds that Akans has met his burden of proving by a preponderance of the evidence that he was disabled under the Plan and that Unum incorrectly terminated his long-term disability benefits.

## IV. CONCLUSION

For the above-stated reasons, the Court **GRANTS** Akans's motion for judgment on the administrative record (Doc. 36) and will **ENTER** judgment in his favor.

**AN APPROPRIATE JUDGMENT SHALL ENTER**.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**